NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—July, 1885.

MORGAN *v.* MORGAN.

*In the matter of the estate of* LUCINDA L. MORGAN, *deceased.*

Neither "poverty" nor "insolvency" being specified, in Code Civ. Pro., § 2817, as grounds for the removal of a testamentary trustee, the entry of an order, requiring the giving of the security prescribed by id., §§ 2638, 2815, and neglect or refusal to comply with such order, are essential preliminaries to the Surrogate's removal of such a trustee upon the ground of insolvency.

In order to justify the removal of a testamentary trustee, upon the ground that, by an improper application of trust moneys, or an investment in securities unauthorized by law, he has demonstrated his unfitness for the due execution of his trust, within the meaning of Code Civ. Pro., § 2817, it must appear that his acts have been such as to endanger the trust property, or to show a want of honesty, or of proper capacity, or of reasonable fidelity.

M., one of two trustees under decedent's will, being the owner of an undivided interest in certain real property in the city of New York, conveyed the same to one P., who thereupon executed a first mort-

gage thereof to the trustees to secure a loan of $35,000, the proceeds of which came to the hands of M., and were subsequently used in the business of a firm of which the trustees were members. The mortgage afforded adequate protection for the repayment of the loan, and, for aught that the evidence disclosed, yielded a rate of interest as large as was obtainable at the time when the loan was effected. Upon an application to remove the trustees for a breach of trust, by reason of the premises,—

*Held*, that though they might have become amenable to some of the consequences which follow from a trustee's acting in any manner for his own benefit, in regard to the subject of his trust, the trustees had not been guilty of any such palpable breach of trust as to demonstrate their unfitness, under Code Civ. Pro., § 2817, to be continued in office, and that the application must, accordingly, be denied.

PETITION of Matthew Morgan, an infant beneficiary under decedent's will, by James N. Platt, his guardian *ad litem*, for the removal of Henry Morgan and another, from office as testamentary trustees under said will. The facts appear sufficiently in the opinion.

PLATT & BOWERS, *for special guardian.*

EVARTS, CHOATE & BEAMAN, *for trustees.*

THE SURROGATE.—This is an application for the removal of Henry Morgan and Edward Morgan as testamentary trustees of several trusts created by the will of Lucinda L. Morgan, deceased. The petitioner, a grandson of the testatrix, is entitled, so long as his uncle, Matthew Morgan, shall live, to one twenty-fourth part of the income of a certain fund of $125,000. Upon the death of Matthew Morgan, the principal of that fund is to go to his children, if any shall survive him, and to the issue of any children deceased; in case there shall be no such children or issue, then to a class in which this petitioner, if living, will be included.

The securities in which the funds of this trust are invested are not in the hands of either of the persons whose removal is here sought, but are in the sole possession of their co-trustee, Mr. Charles E. Butler. The respondents allege, and the petitioner does not deny, that these funds are intact, and that Mr. Butler's pecuniary responsibility is abundantly assured. The petitioner has, moreover, a contingent interest in certain other trusts created by decedent's will, the funds of which trusts are now under the control of the respondents, and are contained in the vaults of safe deposit and trust companies.

The alleged grounds upon which this application for removal chiefly rests, and the only ones that seem to me worthy of consideration, are these:

1st. That in June, 1884, these respondents failed in business, and have ever since been hopelessly insolvent.

2nd. That they have applied to their own use certain moneys belonging to the trusts above specified.

*First.*—The fact of the insolvency of these respondents is admitted by their answer. Does that fact of itself call for their removal? There are English decisions which recognize the bankruptcy or insolvency of a testamentary trustee as, *ipso facto,* a just cause for depriving him of his trust. The rigor of this rule has of late been somewhat relaxed, and the question of removal or non-removal for such a cause is now, in any given case, determined according to its peculiar facts and circumstances.

In the courts of this country, insolvency seems to

have been generally regarded as insufficient ground for the removal of a trustee, unless by reason of it the trust funds have been brought into jeopardy. Within the limitations of the Code of Civil Procedure, I greatly doubt whether a testamentary trustee can lawfully be removed by the Surrogate, on account of the precariousness of his pecuniary circumstances, until he has first neglected or refused to comply with an order requiring him to give security for the protection of his *cestuis que trustent*. Neither poverty nor insolvency is named in § 2817, as one of the grounds for which a removal may be made; but among those grounds the failure of a trustee to give bond as required by a decree of the Surrogate, made in pursuance of § 2815, is distinctly specified.

Section 2815 declares that, upon the disclosure of any facts respecting a testamentary trustee which, if shown to exist in the case of an executor, would justify an order requiring him to furnish security as a condition of receiving letters testamentary, such security may be in like manner exacted from such testamentary trustee. This refers, of course, to § 2638, which provides, among other things, for the giving of a bond by an executor, when "his circumstances are such that they do not afford adequate security" for the due administration of his trust.

I hold, therefore, that the entry of an order requiring the giving of security, and neglect or refusal to comply with such order, are essential preliminaries to the Surrogate's removal of a trustee upon the ground of insolvency. Those preliminaries are here wanting.

*Second.*—Should this petition be granted on account of the action of the respondents in investing $35,00( of the funds in their hands in the New York hotel mortgage? Was that investment, within the meaning of § 2817, "an improper application" of trust moneys, or an investment in "securities unauthorized by law?" And if it was, does the act of the trustees in relation to it show them to be, within the meaning of such section, "unfit for the due execution of their trust?"

It seems to me that the words last quoted must be regarded as a legislative sanction of a familiar doctrine of equity jurisprudence which is expressed by Judge Story (2 Eq. Jur., § 1289), in these words:

"It is not every mistake or neglect of duty or inaccuracy of conduct which will induce courts of equity" to remove a trustee. "The acts or omissions must be such as to endanger the trust property, or to show a want of honesty or of proper capacity or of reasonable fidelity" (see, also, Thompson v. Thompson, 2 *B. Mon.*, 245; Lathrop v. Smalley, 23 *N. J. Eq.*, 192; Matthews v. Murchison, 17 *Fed. Rep.*, 760).

Now, there is little or no controversy as to the facts connected with the investment in question. Henry Morgan, being the owner of an undivided fourteenth part of the New York Hotel property, conveyed the same, in May, 1884, to Joseph B. Pigot, who thereupon executed a mortgage to these trustees to secure a loan of $35,000. The proceeds of this loan came to the hands of Henry Morgan, and were subsequently used in the business of M. Morgan's

Sons, a firm whereof both these respondents were members.  Apart from the fact that they themselves were in effect the borrowers of funds held by them as trustees, their conduct in this transaction is not assailed and is apparently not assailable.  The investment was such an one as is approved by the courts of this State, to wit, a first mortgage upon real property. The mortgage seems to afford adequate protection for the repayment of the loan, and, for aught that is disclosed in the papers before me, the rate of interest which was agreed upon between the parties was as large as was obtainable at the time such loan was effected.

Whatever adverse criticism may properly be made upon the course of the respondents in this matter of the Pigot loan, they are deserving of less severe censure than they would have merited if they had exposed the trust funds to the hazards of any speculative enterprise, or had applied them to their own use upon their mere personal security.  It is true that the proceeds of the loan were employed in ways that they presumably expected would lead to their private advantage, and they may, accordingly, have become amenable to some of the consequences which follow from a trustee's acting or contracting in any manner for his own benefit in regard to the subject of his trust.  To recognize the right of a trustee to lend to himself, directly or indirectly, and even upon undoubted security, the funds committed to his care, would be to open a door to many and palpable mischiefs.

This petitioner claims that the moneys loaned upon the seeurity of the Pigot mortgage have never lost their character as trust funds, and that the *cestuis que trustent* may now insist, at their option, upon charging the respondents with interest thereon at a high rate, or upon claiming all profits and advantages that such respondents may have derived from the transaction. Whether this contention is sound or not, need not here be determined.   In the settlement of the respondents' accounts, it may be hereafter the subject of consideration.   But, assuming that they have transgressed the strict line of their duty, they have not, in my judgment, been guilty of any such palpable breach of trust as to demonstrate their "unfitness," under § 2817, to be continued in office.   The remedy which the law affords a *cestui que trust*, of bringing about, in a proper case, the removal of his trustee is prospective in its character, and has for its chief, if not indeed for its exclusive object, the future security and good management of the trust estate (Hill on Trustees, 190).   Such a remedy is not needed in the case at bar, for there is no cause for apprehension that the retention in office of these respondents, until the termination of the proceeding pending in the Supreme Court for their accounting and discharge, is likely to put in the slightest jeopardy the rights of this petitioner or of the other *cestuis que trustent* whose combined interests are much larger than his own, and who favor the retention rather than the removal of the offending trustees.

My resolution to deny this petition is confirmed by

a fact to which I have already adverted.   Before the day of its filing, the respondents evinced their purpose of voluntarily surrendering these trusts, and, to that end, instituted proceedings in the Supreme Court. Those proceedings may be pushed to a speedy termination, and the petitioner may thus obtain in substance the very relief for which he here prays.

Petition denied.